IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SUZANNE MARIE MCMILLAN,

Plaintiff,

v.

NELSON A. RODRÍGUEZ-NEGRÓN, et al.,

Defendants.

CIVIL NO. 19-1639 (CCC-MDM)

**OPINION AND ORDER**

Suzanne M. McMillan ("McMillan" or "Plaintiff") and Defendant Nelson A. Rodríguez-Negrón ("Rodríguez-Negrón" or "Defendant"), are former spouses. (Docket No. 56 ¶ 1). As their marriage deteriorated, the parties sought divorce. Id. ¶ 5. According to the pleadings, the parties went through a contentious divorce process. Id. at ¶ 10. Since then, McMillan and Rodríguez-Negrón have come into several legal battles. Id. ¶¶ 7; 9. Among these battles is the instant diversity case in which Plaintiff alleges that Defendant submitted her to a pattern of emotional intimidation and psychological violence that allegedly infringes Puerto Rico's general tort statute, P.R. LAWS ANN. tit. 31, § 5141. (Docket No. 53 at 2-3). Rodríguez-Negrón filed a counterclaim to McMillan's suit alleging that Plaintiff caused him unnecessary economic expenses as well as mental anguishes after they filed for divorce. (Docket No. 56 at 10).

Plaintiff now moves to dismiss Defendant's Compulsory Counterclaim pursuant to FED. R. CIV. P. 12(b)(6). (Docket No. 62). After considering the parties' submissions and applicable law, the Court **GRANTS** McMillan's Motion to Dismiss at Docket No. 62 and thus, **DENIES** Rodríguez-Negrón's Compulsory Counterclaim at Docket No. 56.

Case No. 19-1639 (CCC-MDM)

### I. Standard of Review

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6) ("Rule 12(b)(6)"). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Then, the Court must accept all non-conclusory factual allegations in the Complaint as true and draw any reasonable inferences in favor of the plaintiff. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Finally, the courts may affirm a motion to dismiss "only if the facts lend themselves to no viable theories of recovery." Phoung Luc v. Wyndham Management Corp., 496 F.3d 85, 88 (1st Cir. 2007).

### II. Relevant Factual and Procedural Background

Plaintiff McMillan brings this diversity suit against her ex-husband, Defendant Rodríguez-Negrón, seeking damages under Article 1802 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, § 5141.[1] (Docket No. 53). In turn, Rodríguez-Negrón replied to McMillan's

---

[1] The Court granted McMillan leave to amend her complaint. (Docket No. 51). McMillan's Amended Complaint states that after finding out the Rodríguez-Negrón had an adulterous affair, he allegedly submitted her to a pattern of emotional intimidation and psychological violence. (Docket No. 53 at 2-3). The Amended Complaint provides three specific examples to support this claim, Rodríguez-Negrón: (1) gained unauthorized access to her apartment in Wisconsin; (2) sent her threatening unsolicited text messages, and (3) placed a GPS tracking device in her car without any consent in order to send "unsolicited messages to make her aware the he knew where she was." Id. at 4.

2

**Case No. 19-1639 (CCC-MDM)**

Amended Complaint with a Compulsory Counterclaim, seeking redress for the emotional distress and economic damages McMillan caused him since the divorce process began in Commonwealth court.[2] (Docket No. 56 at 10). Just as McMillan, Defendant predicates his tort claim under Article 1802 of the Civil Code of Puerto Rico. Id.

        A. Counterclaim's Factual Allegations

The Court has organized the Counterclaim's pleadings by dividing all relevant facts into four distinct main events that allegedly caused Defendant Rodríguez-Negrón's emotional distress and economic damages. (Docket No. 56). The following events took place after the parties filed for divorce.

First, Defendant alleges that McMillan breached the parties' divorce agreement. Id. at 7-8. According to the pleadings, the parties had a contract in which they agreed to divorce under Commonwealth law's ground of "mutual consent." The agreement also contained other marital property division matters. Id. at 7. Rodríguez-Negrón puts forward that McMillan breached their agreement by taking without consent his personal property. Id. at 8.

Further on, Rodríguez-Negrón states that McMillan stole an intimate and explicit video of him as a means for harassment. Id. at 7. As part of the harassment scheme, she used the video to file multiple legal suits against Defendant wherein the video was attached as part of the court's filings. Id. Defendant advances that McMillan: (1) sought to create a public scandal out of the divorce process and (2) extorted him by threatening to make the video public in exchange for

---

[2] The Court notes that Rodríguez-Negrón's Counterclaim does not meet the "compulsory" requirements of FED. R. CIV. P. 13(a). See Bonilla v. Trebol Motor Corp., 913 F. Supp. 655, 660 (D.P.R. 1995). Defendant's Counterclaim is not sufficiently related to McMillan's Amended Complaint to be considered compulsory. Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 85 (1st Cir. 2010) (validating a compulsory counterclaim if it more than sufficiently related to the complaint). The reason being that the operative facts of both pleadings are not the same. Eon Laboratories, Inc. v. Smithkline Beecham Corp., 298 F. Supp. 2d 175, 179 (D. Mass. 2003) (ruling that the counterclaim and the original complaint must share a logical relationship by having the same aggregate set of operative facts serve as the basis for both claims). The fact that the parties' conflicts began during the Commonwealth divorce proceedings does not make the Counterclaim compulsory.

**Case No. 19-1639 (CCC-MDM)**

money. Id. at 7; 9. In response, Rodríguez-Negrón was forced to sue McMillan in Commonwealth court, arguing the illegal transmission and retention of the video. Id. at 9. The Commonwealth court ultimately declared in a final judgment that McMillan had infringed Rodríguez-Negrón's constitutionally protected human dignity and right to privacy. Id.

In addition, Rodríguez-Negrón states that McMillan devised and engaged in a pattern of betrayal and deceitful practices during the divorce process, including frivolous appeals. Id. at 8. According to the Counterclaim, he was fooled into believing that the divorce would be peaceful and that he did not need an attorney. Id. In her efforts to make the divorce process difficult, McMillan sought for the Commonwealth court to rule that the grounds for divorce, according to the Puerto Rico Civil Code, should be "adultery" and not "mutual consent." Id. Finally, Defendant states that McMillan has continued to harass him with the filing of this lawsuit. Id. at 10.

Pending before the Court is McMillan's motion to dismiss Rodríguez-Negrón's Counterclaim under Fed. R. Civ. P. 12(b)(6). (Docket No. 62). Plaintiff avers that the Counterclaim is untimely under Commonwealth law because the alleged operative facts transpired more than a year before its filing. Id. at 3. In contrast, Defendant posits that McMillan's suit tolled the one-year statute of limitation governing his Compulsory Counterclaim. (Docket No. 68 at 7). In the alternative, he asserts that even if the suit did not toll his claims, the injuries are ongoing and therefore, the Commonwealth law continuous tort doctrine applies. Id. at 7-8.

### III. Legal Analysis and Discussion

The Court first address Plaintiff's main argument for dismissal—that the action is time barred. Nevertheless, McMillan fails to allege the accrual date(s)—*when* the claims' one-year statute of limitations period began to run—for Rodríguez-Negrón's emotional distress claims. See P.R. Laws Ann. tit. 31 § 5298(2). (Docket No. 62 at 3). By the same token, Defendant does not

4

**Case No. 19-1639 (CCC-MDM)**

directly contest McMillan's argument, but instead, counters arguing that Plaintiff's original Complaint tolled the one-year statute of limitations period. (Docket No. 68 at 7). Bearing this in mind, and following the parties' argumentative line, the Court must determine whether the Counterclaim provides sufficient factual allegations to determine the above.

The Counterclaim fails to provide factual allegations necessary to determine accrual. It specifically fails to provide the precise date(s) that McMillan harmed Defendant. This omission makes the Court's task factually impossible. In this timeliness context, exact dates are essential to calculate if the statute of limitations has indeed elapsed. See López-Flores v. Cruz-Santiago, 526 F. Supp.2d 188, 190 (D.P.R. 2007) (calculating with the precise date the statute of limitations for plaintiff's tort actions under Puerto Rico law).

Plaintiff's failure to provide the bare minimum yet essential information regarding the timeliness of Defendant's claims reveals that her arguments are underdeveloped. "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119, 139 (1st Cir. 2017) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (quotation marks omitted)).

Simply put, Plaintiff did not put the Court in a position to capably entertain this argument. As a result, the Court will not consider underdeveloped arguments. Id. ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Accordingly, the Court turns to the merits of the counterclaim.

A. Tort claims

The Court scrutinized Rodríguez-Negrón's Counterclaim and specifically appraised all the events that allegedly caused Defendant's emotional distress and economic damages in order to

5

assess whether, collectively or on their own, these amount to a viable theory of recovery. The Court finds that none of these facts state a claim upon which relief can be granted.

> a. Defendant's individual tort claims

First, the Counterclaim's pleading regarding McMillan's breach of the divorce agreement does not provide facts that would entitle Defendant to relief. As a threshold matter, it would appear that the Court does not even have jurisdiction to entertain a claim arising out of a breach of a divorce agreement under the domestic relation exception to diversity jurisdiction. Yet, the Supreme Court has reiterated several times that the domestic relation exception "covers only a narrow range of domestic relations issues." Marshall v. Marshall, 547 U.S. 293, 307 (2006) (citing Ackenbrandt v. Richards, 504 U.S. 689, 701 (1992) (internal quotation marks omitted)); see also Irish v. Irish, 842 F.3d 736, 741 (1st Cir. 2016) ("[i]n general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree.").

Nevertheless, the Court reads the Counterclaim's pleading as a breach of contract claim. Federal courts have held that contract claims are permissible under the domestic relation exception if they do not interfere with a divorce, alimony, or child custody decree. See Irish, 842 F.3d at 742; see also Norton v. McOsker, 407 F.3d 501, 505 (1st Cir. 2005) (ruling that a plaintiff's tort and contract claims did not fall under the domestic relation exception although the claims were related to the dissolution of the parties' marriage); Dunn v. Cometa, 238 F.3d 38, 41 (1st Cir. 2001) (ruling that a former spouse's tort claims for breach of fiduciary duty and negligence did not fall under the domestic relation exception although they were related to family affairs). Defendant's contract claim seeks an independent compensation for a discrete injury—his emotional distress caused by McMillan's breach of their agreement. See Dunn, 238 F.3d at 41 (overturning a district court's

**Case No. 19-1639 (CCC-MDM)**

ruling dismissing a tort suit related to family affairs because it did not grant or alter a divorce, alimony or child custody decree). Thus, it does not interfere with any prohibited family matter and can be entertained by this Court.

Although the Court has jurisdiction to entertain Rodríguez-Negrón's breach of contract claim, the facts alleged for this possible cause of action are conclusory. To establish a breach of contract, Defendant needs to plead three elements: "(1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." R & T Roofing Contractor, Corp. v. Fusco Corp., 265 F. Supp. 3d 145, 154 (D.P.R. 2017) (citing P.R. LAWS ANN. tit 31, § 3018). When applying these elements to this case, Defendant needed to plausibly allege that he and McMillan had a valid contract, that McMillan breached their agreement, and that he suffered damages due to the breach.

To survive a motion to dismiss Defendant's "complaint must contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Ocasio-Hernandez, 540 F.3d at 12. To assess whether this Counterclaim survives a Rule 12(b)(6) attack, the First Circuit outlined in Ocasio-Hernández a two-pronged approach. Id. First, the Court must isolate and ignore conclusory statements. Schatz, 669 F.3d at 55 (citing Ocasio-Hernandez, 540 F.3d at 12). Conclusory means pleading that only offers "legal labels and conclusions or merely rehash cause-of-action elements." Id. Second, the Court must take all the well-pled facts of the complaint and see if they "plausibly narrate a claim for relief." Id.

Here, the Counterclaim alleges that the parties had a divorce agreement that established that they would seek a divorce on "mutual consent". (Docket No. 56 at 7). It also states that each party would receive monies in equal parts before the Commonwealth Court officially declared the marital property division. Id. These two previous factual allegations are well pled as they successfully

establish the first element of a breach of contract claim.[3] However, Defendant's allegations fail to comply with the second required element, an actual contract breach. The Counterclaim states, in a conclusory manner, that McMillan breached the agreement by taking personal property from Rodríguez-Negrón without his consent. The statement merely rehashes the second element for a contract breach. Defendant provides no additional set of facts, besides this statement, as to McMillan's alleged breach of contract. Without more, this shallow set of facts fail to meet the requisite plausibility standard. See Schatz, 669 F.3d at 55. Thus, the Court finds that Defendant fails to adequately state a claim for breach of contract under Commonwealth law.

Second, the emotional damages claim related to McMillan's harassment, blackmailing, and use of Rodríguez-Negrón's intimate and explicit video is barred by *res judicata*.[4] Claim preclusion, a modality of *res judicata*, "generally binds parties from litigating or relitigating any [claim] that was or could have been litigated in a prior adjudication and prevents claim splitting." Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205 (1st Cir. 2005) (citing Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 42 (1st Cir. 1985)). The Court must look to Commonwealth law to assess whether claim preclusion applies in this case. García-Monagas v. De Arellano, 674 F.3d 45, 50 (1st Cir. 2012). For claim preclusion to apply under Commonwealth law, it must be established that: "(i) there exists a prior judgment on the merits that is 'final and unappealable'; (ii) the prior and current

---

[3] It is not clear from the pleadings if the parties' agreement is valid. Puerto Rico law requires that a divorce agreement, such as the one in this case, must be approved by the state court issuing the divorce decree. See Figueroa Ferrer v. ELA, 7 P.R. Trans. 278 (1978). The Counterclaim is silent on whether the Commonwealth court approved the parties' agreement. However, the Court will assume that the Commonwealth court did approve the agreement. At this stage of the proceedings, the Court is obliged to draw all inferences on Rodríguez-Negrón's favor. Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012).

[4] A district court may dismiss a claim *sua sponte* under *res judicata*. In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). Two conditions must be met for this to proceed. Id. First, the *res judicata* defense must be ascertainable from the complaint's allegations or other documents duly incorporated into the complaint. Id. Second, the facts relied upon by the court must conclusively establish the *res judicata* defense. Id.; see also Padmanabhan v. Hulka, 308 F. Supp. 3d 484, 495-496 (D. Mass. 2018) (*Sua sponte* dismissing plaintiff's claim as it was barred under the *res judicata* defense).

actions share a perfect identity of both 'thing' and 'cause'; and (iii) the prior and current actions share a perfect identity of the parties. . . ." Id. at 51; see also P.R. LAWS ANN. tit. 31, § 3343.

The required elements for claim preclusion are met here. The Counterclaim states that the Commonwealth court issued a final judgment regarding the stolen intimate video.[5] This previous statement satisfies the first requirement. As to the second requirement, the Commonwealth court and present suit share a perfect identity as to both "thing" and "cause." Both lawsuits involve the same object and matter as they arise out of the same nucleus of facts—Plaintiff McMillan's illegal use of the video. Similarly, this suit and the Commonwealth court action share the same parties, McMillan and Rodríguez-Negrón. Hence, satisfying the third requirement. Accordingly, Defendant cannot presently seek damages for emotional distress in this suit. Because claim preclusion prevents him from claim splitting this claim, Defendant should have raised this argument in the prior Commonwealth court case. See García-Monagas, 674 F.3d at 51.

Third, Rodríguez-Negrón is not entitled to relief from an alleged "frivolous" Commonwealth proceeding. Puerto Rico law does not contemplate a tort action for the damages arising from frivolous civil litigation. Giménez Alvarez v. Silén Maldonado, 131 P.R. Dec. 91, 96, 1992 WL 754904 (D.P.R. June 30, 1992); see also Barreto-Almeyda v. First Nat. City Bank., 288 F. Supp. 99 (D.P.R. 1968) ("In general terms, Puerto Rican law does not acknowledge the existence of a civil action for damages as consequence of a civil suit"). Commonwealth law's exclusive remedy for ill-intentioned and frivolous suit litigation is attorney's fees. Casiano Torres v. Don King Productions, Inc., 598 F. Supp. 2d 245, 248 (D.P.R. 2009). If Rodríguez-Negrón wanted relief from the economic damages that resulted from litigating the state court cases, his only remedy was

---

[5] It begs to mention that McMillan appealed the Commonwealth court's judgment to the Supreme Court of Puerto Rico. (Docket No. 56 at 9-10).

**Case No. 19-1639 (CCC-MDM)**

to seek attorney's fees against McMillan in Commonwealth court. The same reasoning applies to Defendant's claim requesting emotional damages due to Plaintiff's harassment with this suit.

In short, each of the events that Defendant alleges as an injury does not provide a claim that this Court could entertain. However, this failure does not end this Court's assessment of the Counterclaim's merits. The Court must now examine the Counterclaim's facts collectively and see if they state a cause of action.

b.  Continuous tort doctrine

Examined collectively, the Counterclaim's facts strongly hint a continuous tort claim. Defendant's Opposition validates this interpretation as it clarifies that "the tort actions by plaintiff against defendant involve a continuing injury."[6] Defendant claims that the continuous tort doctrine applies because there is a pattern of wrongdoing by McMillan and "no single incident in a chain of tortious activity can be identified as the singular act that causes [his] harm." Id.  The Court, however, rules that Defendant has not sufficiently pleaded a continuous tort claim. This ruling is based on the fact that Defendant completely confuses the nature of this claim under Commonwealth law. Thus, the Court finds it necessary to define the doctrine and its scope.

A complete and extensive definition of the continuous tort doctrine can be found in the Supreme Court of Puerto Rico's leading case Rivera Ruiz v. Mun. de Ponce, 196 P.R. Dec. 410, 417 (P.R. 2016).[7] In this case, the Court defined this tort modality as a continued, or uninterrupted, disturbance of unlawful acts or omissions which cause foreseeable lasting damages. Id. Since the

---

[6] Defendant's clarification is made as an alternative argument to avoid dismissal on timeliness grounds. See Docket No. 68 at 7-8.

[7] Consistent with Local Rule 5(g), attached to this Opinion and Order is a certified translation of this case. The certified translation was taken from 16-cv-1586 (RAM) Docket No. 205-1.

tortfeasor's illegal acts are continuous, the cause of action continually renews itself, for the statute of limitation purposes, until the tortfeasor ceases his harmful conduct. Id. at 418.

Now, leaving abstract definitions aside, the Court sets a hypothetical and illustrative example of a continuous tort, say damages caused by public nuisances. Suppose a city factory's smoke and gases affects other nearby workers in the area. The ongoing injuries produced by the smoke and gases to nearby workers generate a cause of action under the continuous tort doctrine in their favor. See Seda et al. v. Miranda Hnos. & Co., 88 P.R. Dec. 355, 361, 1963 PR Sup. LEXIS 347 (1963) (holding that injuries produced by the smoke and gases to nearby workers is a continuous tort).

Nevertheless, a continuous tort should not be confused with the injury it produces. In Rivera Ruiz, the Supreme Court of Puerto Rico clarified this misconception by stating that continuous damages are acts or omissions that produce the harm and not the injury suffered. Rivera-Ruiz, 196 P.R. Dec. at 417-418; see also Bonilla v. Trebol Motor Corp., 913 F. Supp. 655, 660 (D.P.R. 1995) (holding, under Puerto Rico law, that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation") (citing Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)). Indeed, to avoid confusion, the Rivera-Ruiz's court explained that a more accurate name for the tort would be "damages caused by continuous acts [or omissions]."[8] Rivera-Ruiz, 196 P.R. Dec. at 418. Going back to the public nuisance example, possible damages, such as emotional distress, caused to the city factory workers can be considered to be the injury itself, under the continuous tort doctrine. Thus, in the said example, a plaintiff's injury or harm is irrelevant for continuous tort purposes. See Bonilla, 913 F. Supp. at 659.

---

[8] The continuous tort doctrine's translation under in Spanish civil law tradition can be misleading. Continuous tort in Spanish is "daños continuados", which literal meaning is "continued damages". But according to case law, the actual tort is the act or omission by the tortfeasor that produces harm, and not the injury that the plaintiff suffers. Rivera Ruiz v. Mun. de Ponce, 196 P.R. Dec. 410, 417-418 (P. R. 2016).

**Case No. 19-1639 (CCC-MDM)**

Here, Defendant does not meet the legal standard to plead a continuous tort claim. His continuous tort claim is distinguishable from the one assessed and validated in Rivera-Ruiz. In that case, the Supreme Court of Puerto Rico held that a municipality's failure to fix a neighborhood's sewer system, which caused foreseeable floods in the plaintiff's street and property, was a continuous tort. Id. at 429-430. The municipality's *omission* to fix the neighborhood's ongoing sewer problem gave the tort its continuous character. Unlike the plaintiff in Rivera-Ruiz, Rodríguez-Negrón's Counterclaim pleads a pattern of interrupted disturbances explaining how Plaintiff harmed Defendant and misses to plead the original unlawful *act* or *omission* that triggers the chain of illegal acts.

Further on, Rodríguez-Negrón ongoing emotional distress—caused by McMillan's past actions—does not satisfy the continuous tort's legal standard. The reason is that Defendant's Negron's emotional distress can be classified as the "injury" and not as an original act that generates the continual illegal acts. See Rivera-Ruiz, 196 P.R. Dec. at 417; Bonilla, 913 F. Supp. at 659. Hence, while Defendant's emotional distress is predictable and uninterrupted, it cannot give rise to a continuous tort claim.

In sum, Rodriguez-Negron's Counterclaim does not hold water. He fails to successfully plead a continuous tort claim or any other facts that could entitle him to redress.

**IV.    Conclusion**

On a final note, the Court expresses its concern regarding the conduct of both parties throughout this litigation. The record contains several instances in which the parties engaged in frivolous litigation tactics some already resulting in sanctions.[9] The Court finds the parties' actions

---

[9] The Court dismissed McMillan's original complaint against Co-Defendant Zoraida Buxó after ruling that it did not state a claim. (Docket No. 28). The Court sanctioned McMillan as it held that this complaint was frivolous. (Docket No. 70). Still pending before the undersigned is Magistrate Judge Marshal D. Morgan's Report and

**Case No. 19-1639 (CCC-MDM)**

and strategic litigation tactics alarming as it appears as if the real motive behind this litigation is the parties' personal vendettas against each other. If true, the parties are wasting scarce judicial resources and are misusing the undersigned's time as well as Magistrate Judge Morgan's. The Court forewarns the parties that using its finite resources for frivolous litigation is sanctionable conduct. See Docket No. 70. The Court will not hesitate to impose further sanctions if, in the future, the parties continue to engage in dilatory tactics. Lastly, the Court highly encourages the parties to reach an amicable settlement to put an end to this suit.

For the reasons stated above, Plaintiff McMillan's Motion to Dismiss the Counterclaim under FED. R. CIV. P. 12(b)(6) is **GRANTED**. (Docket No. 62). As a result, Rodríguez-Negrón's Counterclaim is **DENIED**. (Docket No. 56).

**SO ORDERED.**

In San Juan, Puerto Rico this 18th day of December 2020.

*s/Gustavo A. Gelpí*
GUSTAVO A. GELPI
Chief United States District Judge

---

Recommendation favoring sanctions against McMillan for filing a frivolous original complaint against Rodríguez-Negrón. (Docket No. 77).